1   JOSEPH D. LEE (SBN 110840)
    Joseph.Lee@mto.com
2   ROBYN K. BACON (SBN 251048)
    Robyn.Bacon@mto.com
3   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue, 35th Floor
4   Los Angeles, CA  90071-1560
    Telephone:      (213) 683-9100
5   Facsimile:      (213) 687-3702

6   Attorneys for Plaintiff
    C.H., A MINOR
7   ROBERTA SAVAGE (SBN 202940)
    roberta@robertasavagelaw.com
8   221 G Street, Suite 207
    Sacramento CA 95650
9   Telephone:      530-753-4497
    Facsimile:      530-753-4498

10
    Attorneys for Plaintiff
11  C.H., A MINOR

12  *Counsel for Defendants Listed on Next Page*

13                  **UNITED STATES DISTRICT COURT**

14                 **NORTHERN DISTRICT OF CALIFORNIA**

15

16  **C.H., by and through L.H., his Guardian**          **CASE NO.  08-CV-2531-SC**
17  **Ad Litem,**
                                                          **STIPULATION FOR FILING OF**
18              **Plaintiff,**                            **PLAINTIFF'S FIRST AMENDED**
                                                          **COMPLAINT; [PROPOSED] ORDER**
19          **vs.**

20  **FREMONT UNIFIED SCHOOL**
    **DISTRICT, and ALAMEDA COUNTY**
21  **BEHAVIOR HEALTH CARE**
    **SERVICES,**
22
                **Defendants.**
23
    **FREMONT UNIFIED SCHOOL**
24  **DISTRICT,**
                    **Counterclaimant,**
25
            **vs.**
26
    **C.H., by and through L.H., his Guardian**
27  **Ad Litem,**
                    **Counterdefendant.**
28

**STIPULATION FOR FILING OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

1 AMY LEVINE (SBN 160743)
alevine@mbdlaw.com
2 DAMARA MOORE (SBN 215678)
dmoore@mbdlaw.com
3 MILLER BROWN & DANNIS
71 Stevenson Street, 19th Floor
4 San Francisco CA 94105
Telephone:    415-543-4111
5 Facsimile:    415-543-4384

6 Attorneys for Defendant
FREMONT UNIFIED SCHOOL DISTRICT
7
RICHARD E. WINNIE (SBN 68048)
8 County Counsel
ANN HANSEN (SBN 122951)
9 Deputy County Counsel
County of Alameda
10 1221 Oak Street, Suite 450
Oakland, CA 94612-4226
11 Telephone:    510-272-6700
Facsimile:    510-272-5020
12
Attorneys for Defendant
13 COUNTY OF ALAMEDA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

**STIPULATION FOR FILING OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

1

IT IS HEREBY STIPULATED by and between the parties hereto through their respective

2

attorneys of record that Plaintiff C.H. may file his First Amended Complaint, a copy of which is

3

attached hereto.  The amendments are as follows:

4

<u>Original Complaint</u>                                         <u>Proposed Amended Language</u>

5

P. 2, ¶ 3, ll. 25-28:                                            P. 2, ¶ 3, ll. 25-28

6

"The only signed IEP that remains in effect for          "**At that time**, the only signed IEP in effect for

7

CH's 2007-2008 school year is the one signed            CH's

by all parties in June 2007.."                                   2007-2008 school year **was** the one signed by

8

                                                                 all parties in June 2007 …."

P. 4, ¶ 8, ll. 26-28:

9

                                                                 P. 4, ¶ 8, ll. 26-27:

10

",,,,the only program that his parents, the              "…**the** ~~only~~ **program** ~~that~~ **his parents**, the

District and ACBHCS *have* agreed was                    District and ACBHCS ~~have~~ agreed was

11

appropriate and the only one that is provided           appropriate ~~and the only one that is provided~~

for in the only signed and valid IEP in this             ~~for in the only~~ in a signed and valid IEP ~~in~~

12

matter."                                                         ~~this matter.~~"

13

14

IT IS FURTHER STIPULATED that Defendant Fremont Unified School District and

15

Defendant Alameda County Behavioral Health Care Services ("Defendants") waive notice and

16

service of the amended complaint.  All denials, responses and affirmative defenses contained in

17

the answers filed by Defendants to the original complaint shall be responsive to the amended

18

complaint and Defendants shall not be required to answer the amended complaint.

19

IT IS FURTHER STIPULATED that the Defendants reserve the right to file responsive

20

pleadings to the First Amended Complaint within the time allowed by the applicable rules of

21

Federal Civil Procedure.

22

23

24

25

26

27

28

- 3 -

1    DATED: September 12, 2008          Munger, Tolles & Olson LLP
                                        JOSEPH D. LEE
2                                       ROBYN K. BACON

3

4                                       By: /s/Robyn Kali Bacon
                                              ROBYN KALI BACON
5
                                        Attorneys for Plaintiff
6
     DATED: September 12, 2008          MILLER BROWN & DANNIS
7                                       AMY LEVINE

8

9                                       By: /s/Damara Moore
                                              DAMARA MOORE
10
                                        Attorneys for Defendant
11                                      FREMONT UNIFIED SCHOOL DISTRICT

12   DATED: September 12, 2008          OFFICE OF THE COUNTY COUNSEL
                                        RICHARD E. WINNIE
13                                      ANN HANSEN

14

15                                      By: /s/Ann Hansen
                                              ANN HANSEN
16
                                        Attorneys for Defendant
17                                      COUNTY OF ALAMEDA

18

19

20

21

22

23

24

25

26

27

28

- 4 -

**STIPULATION FOR FILING OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

1    ~~[PROPOSED]~~ **ORDER**

2        PURSUANT TO STIPULATION, IT IS SO ORDERED.

3

4

5

6

7    DATED: September ___15___, 2008

8        United St...

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATION FOR FILING OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

        I, the undersigned, declare that I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California 90071-1560.

        I hereby certify that this document(s) filed through the ECF filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non-registered participants on September 12, 2008.

        On September 12, 2008, I served upon the interested party(ies) in this action the foregoing document(s) described as:

**STIPULATION FOR FILING OF PLAINTIFF'S FIRST AMENDED COMPLAINT; [PROPOSED] ORDER**

☒   By placing ☐ the original(s) ☒ a true and correct copy(ies) thereof, as set out below, in an addressed, sealed envelope(s) clearly labeled to identify the person(s) being served at the address(es) set forth on the attached service list.

☒   **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the United States Postal Service at 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California, on that same date, following ordinary business practices. I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

☐   **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I delivered the sealed Federal Express envelope(s) to an employee authorized by Federal Express to receive documents, with delivery fees paid or provided for.

☐   **BY FACSIMILE (AS INDICATED ON ATTACHED SERVICE LIST)** By causing to be sent a true and correct copy(ies) of said document via facsimile transmission. The transmission was reported as complete and without error. A true and correct copy of the machine's transmission report, indicating the date and time that the transmission was completed without error is attached to this proof of service and is incorporated herein by this reference. The telephone number of the facsimile machine I used was (213) 683-9510. This facsimile machine complies with Rule 2003(3) of the California Rules of Court.

☐   **(STATE)** I declare under penalty of perjury that the foregoing is true and correct.

☒   **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

1

Richard Edward Winnie                    Attorneys for County of Alameda
Office of the County Counsel

2

1221 Oak Street, Suite 450
Oakland, CA   94612-4296

3

Telephone: (510) 272-6700

4

Fax: (510) 272-5020

5

Executed on September 12, 2008, at Los Angeles, California.

6

7

8

_____
                    Carol Jette

9

5708547.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1   **JOSEPH D. LEE (SBN 110840)**
    Joseph.Lee@mto.com
2   **ROBYN K. BACON (SBN 251048)**
    Robyn.Bacon@mto.com
3   **MUNGER, TOLLES & OLSON LLP**
    **355 South Grand Avenue**
4   **Thirty-Fifth Floor**
    **Los Angeles, CA  90071-1560**
5   **Telephone:    (213) 683-9100**
    **Facsimile:    (213) 687-3702**
6
7   **ROBERTA SAVAGE (SBN 202940)**
    roberta@robertasavagelaw.com
    **221 G Street, Suite 207**
8   **Sacramento CA 95616**
    **Telephone:    (530) 753-4497**
9   **Facsimile:    (530) 753-4498**
10  **Attorneys for Plaintiff**

11

12                    **UNITED STATES DISTRICT COURT**

13                  **NORTHERN DISTRICT OF CALIFORNIA**

14

15  **C.H., a minor, By and Through L.H.,**          **CASE NO.  08-CV-2531-SC**
    **His Guardian Ad Litem,**
16                                                   **PLAINTIFF'S FIRST AMENDED**
            **vs.**                                  **COMPLAINT FOR RELIEF FROM**
17                                                   **ADMINISTRATIVE DECISION,**
    **FREMONT UNIFIED SCHOOL**                       **PURSUANT TO 20 U.S.C. § 1415**
18  **DISTRICT, a public entity, and**

19  **ALAMEDA COUNTY BEHAVIORAL**
    **HEALTH CARE SERVICES, a public**
20  **entity,**

21          **Defendants.**

22

23          NOW COMES C.H., a minor, by and through L.H., his Guardian Ad Litem, for a

24  complaint against Defendants FREMONT UNIFIED SCHOOL DISTRICT ("District") and

25  ALAMEDA COUNTY BEHAVIORAL HEALTH CARE SERVICES ("ACBHCS") and alleges

26  as follows:

27

28

**SUMMARY OF THE CASE**

1.      The Plaintiff, C.H., has been aggrieved by a hearing decision rendered by an Administrative Law Judge ("ALJ"), pursuant to Section 1415(i)(2)(A) of Title 20 of the United States Code, also referred to as the Individuals with Disabilities Education Act ("IDEA"). Therefore, this action is brought as an appeal of that decision.

2.      The underlying dispute in this case is over the proper educational placement for C.H., a 10-year old child with Bipolar Disorder.  On June 12, 2007, after a difficult five months in special education classes at a District elementary school, C.H.'s parents, the District and representatives of ACBHCS met to develop an Individualized Education Plan ("IEP") to provide for C.H.'s education for the coming school year.  At the meeting, all parties agreed that a non-public school would be the appropriate placement for him.  The Defendants and C.H.'s parents signed the IEP and, in the weeks that followed, the Defendants made referrals to three District-approved non-public schools while C.H. applied for admission.  He was ultimately accepted at Esther B. Clark ("Clark"), one of the three District- and ACBHCS-approved schools, and made plans to start attending classes there that fall.

3.      *The week before* he was to begin school at Clark, C.H. and his parents were notified by the District that it wanted to hold a meeting to discuss placement options for C.H.'s education in the school year that would have already begun by that point.  At that meeting, which was held on September 5, 2007, without consideration of its earlier offer or C.H.'s unique needs, the District presented an entirely new and pre-determined IEP that had not been discussed with or approved by C.H.'s parents.  In this new IEP offer, the District proposed that C.H. attend a new program at a District school rather than the non-public school options to which it had agreed just three months before.  C.H. and his parents did not agree to cooperate with the District's ambush, did not sign the IEP, and instead filed a complaint with the Office of Administrative Hearings ("OAH") for a hearing to determine whether the District's offer was a valid one.  At that time, the only signed IEP in effect for C.H.'s 2007-2008 school year was the one signed by all parties in June 2007, which provided for a non-public school placement at one of three District-approved schools.

- 2 -

4.      Under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415(j), CAL. EDUC. CODE § 56505(d), the District and ACBHCS were obligated to implement the last signed IEP, which was the June 12, 2007 IEP placing C.H. at Clark, until the dispute over the new plan could be resolved.  Instead, the District refused.  Had C.H. had the resources, he would have attended Clark anyway and asked for reimbursement for his tuition expenses at the administrative hearing.  As discussed in more detail below, because the ALJ found that the District and ACBHCS's actions violated C.H.'s right to a free and appropriate public education ("FAPE"), his parents would have been reimbursed for those tuition expenses had they been able to take advantage of this option.

5.      But C.H. did not have the resources and his parents did not have options.  The previous year they had signed an IEP that placed C.H. in a District school that so poorly addressed his needs that he had to be hospitalized.  Over the summer, the District had placed C.H. in a program with a teacher who did not even know of C.H.'s diagnosis or have access to his special education file.  Now the District was offering a place at a brand new, not-yet-fully staffed program that did not have the expertise or the services necessary to help C.H. learn.  Warned by C.H.'s psychiatrist that another failure could have serious and even permanent consequences for C.H.'s condition – including further hospitalization or worse – C.H.'s parents made the difficult decision not to send C.H. to school until after the administrative hearing.

6.      On or about February 19, 2008, over two months after the close of the two-week hearing, the ALJ issued a decision finding that the District and ACBHCS had denied C.H. his right to a free appropriate public education in seven different ways.  Specifically, he found that the District and ACBHCS had:

a.      Failed to implement the June 12, 2007 IEP that provided for a non-public school placement at one of three District-approved institutions;

b.      Failed to give C.H.'s parents an opportunity to fully participate in the IEP process by making a pre-determined offer at the September 5, 2007 meeting;

c.      Failed to develop goals to address C.H.'s problems with reading fluency and depression;

- 3 -

d. Failed to perform an occupational therapy assessment after C.H.'s parents requested one;

e. Failed to give his parents prior written notice, as required by the IDEA, 20 U.S.C. § 1415(b)(3) and CAL. EDUC. CODE § 56500.4(a), of its decision not to perform an occupational therapy assessment;

f. Failed to include present levels of performance among the goals and objectives in his mental health assessment; and

g. Failed to provide counseling to C.H. during a week he was receiving home instruction.

7. Because of the District and ACBHCS's failure to provide him with a free appropriate public education in compliance with the IDEA, C.H. has now lost the better part of a year of education and treatment in an academic setting, causing him emotional and intellectual harm and jeopardizing his future. Moreover, in his pursuit of the education to which he is entitled, he has incurred attorney fees and other expenses.

8. The ALJ recognized this harm, but he offered a wholly inadequate remedy. Had C.H. been able to afford tuition at Clark without the cooperation of the District and ACBHCS, he would have been entitled to reimbursement for the tuition he paid as a form of compensatory relief under the IDEA. However, C.H. could not afford to attend Clark and, as a result, by the time of the ALJ's decision, he had suffered the greater loss of missing several months of school. As compensation for that loss, the ALJ created a remedy out of whole cloth that came nowhere near making up for missing an entire semester of the fourth grade: 1.5 hours of tutoring and 1 hour of additional counseling every week for a year. In crafting this remedy, the ALJ relied on no expert testimony or other record evidence, and there was none to support his finding. This "remedy" falls far short of compensating the educational harm that C.H. has suffered from the District and ACBHCS's refusal to honor the signed June 12, 2007 IEP. To this day, C.H. has still been denied the education to which he is entitled: placement in Clark, the program his parents, the District and ACBHCS agreed was appropriate in a signed and valid IEP.

1

**JURISDICTION AND VENUE**

2        9.     This action arises under the laws of the United States, *see* 20 U.S.C. §

3   1415(i)(3)(A), and the State of California, *see* CAL. EDUC. CODE § 56505(k).  Jurisdiction is

4   conferred on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

5        10.    Venue is proper in this Court under 28 U.S.C. § 1391(b).  C.H. and Defendants

6   reside within the County of Alameda, in the Northern District of California, and all of the events

7   that are the subject of this complaint took place within the Northern District of California.

8

**PARTIES**

9        11.    C.H. is a citizen of the United States, and is currently 10 years old.  C.H. resides

10   with his parents, R.H. and L.H., in the County of Alameda, within the boundaries of the

11   Defendant District's educational jurisdiction, and is a student in Alameda County.  C.H. has been

12   diagnosed with Bipolar Disorder, and is eligible for special education and related services

13   pursuant to the IDEA and Sections 56000 *et seq.* of the California Education Code.

14        12.    The District is a public entity organized and existing under the laws of the State of

15   California, with the capacity to be sued.  The District receives federal funds from the United

16   States Department of Education pursuant to the IDEA, and is required to provide a free and

17   appropriate public education in the least restrictive environment to all disabled children whose

18   parents reside within the District's educational boundaries.

19        13.    ACBHCS is a public entity organized and existing under the laws of the State of

20   California with the capacity to be sued.

21

**STATUTORY SCHEME UNDER IDEA**

22        14.    The IDEA provides federal funds to assist state and local agencies in educating

23   children with disabilities, but conditions such funding on compliance with certain goals and

24   procedures.  20 U.S.C. § 1412.  The IDEA (formerly known as the Education For All

25   Handicapped Children Act, P.L. 94-142) was adopted in 1975 to ensure that all children with

26   qualifying disabilities receive a public school education.  In adopting the IDEA, Congress found

27   that the educational needs of millions of disabled children were not being met because they were

28   not receiving appropriate educational services.  20 U.S.C. § 1400(c)(2)(A).  With the IDEA,

1   Congress found it could improve the effectiveness of special education by "having high
2   expectations for such children" and by "strengthening the role and responsibility of parents and
3   ensuring that families of such children have meaningful opportunities to participate in the
4   education of their children at school and at home." *Id.* at § 1400(c)(5)(A)-(B). Therefore,
5   Congress adopted the IDEA "to ensure that all children with disabilities have available to them a
6   free appropriate public education that emphasizes special education and related services designed
7   to meet their unique needs and prepare them for further education, employment and independent
8   living." *Id.* at § 1400(d)(1)(A).

9          15.    Educational programs for disabled children are designed and implemented through
10  Individualized Education Programs (IEPs) which contain, among other things, statements of the
11  following: the child's present levels of educational performance; annual and short-term goals and
12  objectives; the specific educational services to be provided to the child; and the extent to which
13  the child will be educated in regular education programs. *Id.* at § 1414(d)(1)(A). The IEP is
14  crafted annually by a team that includes a representative of the local educational agency, the
15  child's teacher and parents, and, in appropriate cases, the child. *Id.* at § 1414(d)(1)(B).

16         16.    In addition to these substantive provisions, the IDEA contains numerous
17  procedural safeguards. In particular, the IDEA requires procedures to allow the parents or
18  guardians of a disabled child to participate in all meetings related to "the identification,
19  evaluation, and educational placement of the child, and the provision of a free appropriate public
20  education to the child." *Id.* at § 1415(b)(1). It also guarantees parents notification of any changes
21  involving such evaluation and placement, *id* at § 1415(b)(3), and the opportunity to bring a
22  complaint "with respect to any matter relating to" such evaluation and educational placement. *Id.*
23  at § 1415(b)(6)(A); *see also* Cal. Educ. Code § 56500.4 and § 56501(a).

24         17.    Pursuant to § 1415(b)(6)(A) of the IDEA, whenever a parent disagrees with a
25  proposed IEP, the parent may file a complaint with respect to any matter relating to the
26  identification, evaluation or educational placement of the child, or the provision of a free
27  appropriate public education to the child. Pursuant to § 1415(f)(1)(A), whenever such a
28  complaint has been received, the parent shall have an opportunity for an impartial due process

1    hearing which shall be conducted by the State education agency. *See also* CAL. EDUC. CODE §

2    56501(b)(4). As required by the IDEA, California has established an impartial due process

3    procedure through the California Office of Administrative Hearings ("OAH") in Sacramento,

4    California.

5          18.     Under federal and California law, unless the parties agree differently, a special

6    education student is entitled to remain in his or her current educational placement until due

7    process hearings are completed, in order to maintain the *status quo* of the student's educational

8    program while the dispute is resolved. 20 U.S.C. § 1415(j); CAL. EDUC. CODE § 56505(d). The

9    "stay put" placement is typically that contained in the most recent signed IEP. Furthermore,

10   "those components of the program to which the parent has consented shall be implemented so as

11   not to delay providing instruction and services to the child." CAL. EDUC. CODE § 56346(e).

12         19.     After the administrative hearing officer renders a decision, "[a]ny party aggrieved

13   by the findings and decision" has the right to bring a civil action in state or federal court. 20

14   U.S.C. § 1415(i)(2).

15                            **STATEMENT OF FACTS**

16   **I.    During 2006-2007 School Year, C.H. Attended District Schools Without Success**

17         **A.    Because of delays in assessing his needs, C.H. was denied special education for**

18             **the first half of the 2006-2007 school year.**

19         20.     In August, 2006, C.H., then eight years old, was diagnosed with Bipolar Disorder,

20   Not Otherwise Specified.

21         21.     C.H. began attending District schools in the 2006-2007 school year, his third grade

22   year, as a student in general education classes.

23         22.     On or about August 9, 2006 and on or about August 17, 2006, as a result of his

24   Bipolar Disorder diagnosis, C.H.'s parents requested a special education assessment from the

25   District. C.H.'s parents also requested a concurrent referral to ACBHCS for a mental health

26   assessment.

27         23.     The District began its assessment of C.H. on or about September 12, 2006.

28   However, the District did not refer C.H. to ACBHCS for assessment until or about November 3,

1   2006.  Without an ACBHCS assessment, C.H. was not eligible to attend the District's special

2   education day treatment program, run by East Bay Agency for Children at Harvey Green

3   Elementary School ("EBAC").  In the interim, C.H. remained in general education classes.

4        24.     Because he was not receiving necessary special education services in his general

5   education classes, C.H. was unable to function normally at, or gain educational benefit from,

6   school.  Among other things, C.H. was experiencing wild mood swings, he frequently refused to

7   participate or even stay in class, and he exhibited a variety of inappropriate behaviors, including

8   crying during class and hiding under his desk for extended periods of time.

9        25.     On November 3, 2006, the District and C.H.'s parents met to formulate an IEP.  At

10  that meeting, they agreed that C.H. needed special education.  The District offered a temporary

11  place at a Special Day Class ("SDC") at an unspecified location.  Because they had not been

12  properly informed of their procedural rights, in violation of section 1415(d) of the IDEA, C.H.'s

13  parents signed the IEP, even though they had not visited, nor did they even know the location of,

14  the offered SDC.

15       26.     The SDC proposed at the November 3, 2006 IEP meeting was not an appropriate

16  placement for C.H.  Among other deficiencies, the SDC had no staff familiar with Bipolar

17  Disorder; it was designed for students with mild to moderate conditions although C.H.'s general

18  education teacher had already reported that C.H.'s mood swings were unlike any she had ever

19  seen; C.H. would not have a one-to-one aide available to help him during class time; and placing

20  C.H. in the SDC would require that he make two transitions – one from general education to the

21  SDC, then another from the SDC to his permanent placement after ACBHCS finished its

22  assessment – despite a warning from C.H.'s psychiatrist that transitions would be especially

23  difficult for him to navigate with success.

24       27.     The November 3, 2006 IEP also included inadequate goals and objectives for C.H.

25  for the rest of the school year.  Specifically, it did not include any goals or objectives addressing

26  C.H.'s difficulties with reading fluency or depression.  Also, because C.H. still had not received a

27  mental health assessment, the November 3, 2006 IEP did not include clearly needed mental health

28  goals and objectives.

- 8 -

28.     As a result of C.H.'s difficulties in general education classes, on or about January 12, 2007, the District and C.H.'s parents met, agreed, signed and began implementation of an IEP that required the District to provide 10-hours of home instruction and 20 minutes of counseling for the week until C.H. could be enrolled in the EBAC program. The District provided the 10 hours of instruction, but it did not provide the 20 minutes of counseling.

**B.    C.H.'s condition deteriorated while attending EBAC.**

29.     ACBHCS completed its assessment on or about January 18, 2007. In violation of the requirements of Section 1414(d)(1)(A)(i) of the IDEA, the goals and objectives in the ACBHCS assessment did not include present levels of performance.

30.     Upon completion of the ACBHCS assessment, C.H. began attending EBAC on or about January 23, 2007.

31.     The EBAC program failed to properly address C.H.'s academic and health needs. Specifically, (1) the EBAC therapist, Mr. Fenaroli, lacked knowledge about or experience with Bipolar Disorder, limiting his ability to communicate effectively with C.H.'s parents and his psychiatrist about his condition; (2) there was no established system of communication between home and school, making it impossible to coordinate efforts to manage C.H.'s symptoms; (3) there were no specific behavior plans designed to help C.H. better manage his symptoms, which were interfering with his ability to learn or function at school and at home; (4) there was no systematic process for teaching replacement behaviors, a key area of treatment for a student with C.H.'s condition; and (5) C.H.'s parents were not receiving any specific information about C.H.'s performance and were therefore unable to determine whether he was making any progress.

32.     C.H.'s parents raised these concerns at an April 19, 2007 IEP meeting where they also requested an occupational therapy assessment for C.H., due to his poor handwriting and his hypersensitivity to noise and touch.

33.     C.H. never received an occupational therapy assessment, nor did his parents receive prior written notice explaining the District's decision not to assess C.H.

- 9 -

34.     C.H.'s condition deteriorated and his behavior escalated until, fearing for his safety, his parents admitted him for in-patient treatment at a psychiatric hospital on or about May 15, 2007.

35.     Upon C.H.'s release from the hospital on or about May 22, 2007, he returned to EBAC, where he remained for approximately two weeks, until the end of the regular school year. During that time, C.H. made little or no progress toward his academic goals and showed little to no signs of academic improvement.

**C.     C.H.'s special education needs were unaddressed during the 2006-2007 summer or "extended school year."**

36.     During the summer break after the 2006-2007 school year, C.H. attended a District "extended school year" program at which Mr. Taubman-Walker was his teacher.

37.     Mr. Taubman-Walker did not know of C.H.'s condition nor did he have access to C.H.'s IEP records.  As a result, Mr. Taubman-Walker was completely unaware of C.H.'s academic and behavior needs, goals or objectives, or of any academic or behavioral plans that had been implemented for C.H.

**II.     On June 12, 2007, District, ACBHCS and C.H. Signed a Valid IEP Requiring a Non-Public School Placement for the 2007-2008 School Year.**

38.     On or about June 5, 2007, the District sent a letter to C.H.'s parents indicating that it had not renewed its contract with EBAC for the provision of mental health services.  The letter did not mention that at or around this time, the District had entered negotiations with Eastfield Ming Quong ("EMQ"), another mental health services provider, to operate a similar program to that administered by EBAC at the Green Elementary School, beginning the following school year. EMQ had not operated a special education program at any District elementary school prior to this time.

39.     On or about June 12, 2007, the District, ACBHCS and C.H.'s parents met to develop an IEP for C.H. for the next school year.  At this meeting, the District, ACBHCS and C.H.'s parents agreed that a non-public school was the only appropriate placement for C.H. for

the 2007-2008 school year.  This agreement was memorialized in a signed and valid IEP, the only one that remains in force to this day.

40.     At the June 12, 2007 meeting, the District and ACBHCS presented C.H.'s parents with a list of three District-approved non-public schools — Esther B. Clark, the Seneca Center, and Children's Learning Center — any one of which, according to the District and ACBHCS, would be an acceptable placement pursuant to the signed 2007/2008 IEP.  The District also indicated that if C.H. were admitted to more than one of the three schools, his parents would be authorized to choose their preferred school.

41.     On or about July 5, 2007, C.H.'s parents – having learned that Children's Learning Center did not offer the kind of program that C.H. needed and that the Seneca Center had no openings for Fall 2007 – contacted Jack Bannon, the District's Director of Special Education, requesting that he comply with the June 12, 2007 IEP and send the referral information to Clark necessary for C.H.'s placement there.

42.     In response, on or about July 5, 2007, Jack Bannon agreed to send a referral packet to Clark for the 2007-2008 school year.

43.     On or about August 22, 2007, C.H. was accepted to start fourth grade at Clark, one of the three non-public placements to which the District and ACBHCS had agreed in the June 12, 2007 IEP.  He and his parents made preparations for him to start classes at Clark, which began on August 28, 2007.  In addition, they immediately notified the District of C.H.'s acceptance and plans to enroll.

**III.     The District Refuses To Comply With the June 12, 2007 IEP And Denies C.H. A Free Appropriate Education For The 2007-2008 School Year.**

44.     On August 22, 2007, *one week before classes at Clark were to begin*, the District stated that it was no longer willing to abide by the IEP that it signed on June 12, 2007.  It contacted C.H.'s parents to schedule a meeting on September 5, 2007 to discuss yet another IEP for C.H. for the 2007-2008 school year, despite the fact that a signed IEP was already in place and the start of the agreed-upon school year was just days away.

45.     The team assembled for the September 5, 2007 IEP meeting was not properly constituted.  Specifically, no one from ACBHCS was present.

46.     At this September 5, 2007 meeting, the District offered an entirely different IEP than the one that had been signed and agreed to on June 12, 2007.  Attempting to rewind time, the District disavowed its previous signed IEP and offered to place C.H. at the new day treatment program, now run by EMQ, at the District's Green Elementary School.

47.     The District and ACBHCS failed to give C.H. or his parents prior written notice, as required by 20 U.S.C. § 1415(b)(3) and CAL. EDUC. CODE § 56500.4, regarding its unilateral decision not to implement the June 12, 2007 IEP.

48.     The District and ACBHCS determined that an offer of a place at EMQ was appropriate before the IEP meeting on September 5, 2007, denying C.H.'s parents their right to meaningfully participate in all decisions concerning C.H.'s placement, as required by 20 U.S.C. § 1415(b)(1); see also CAL. EDUC. CODE § 56500.1.

49.     C.H. and his parents did not agree to or sign the September 5, 2007 IEP because they did not believe that a placement at EMQ was appropriate.  Among other problems: the EMQ program at Green Elementary had no experience with students with Bipolar Disorder like C.H.; the program was not fully staffed; there were no established protocols for home-school communication, for symptom management, or for the reinforcement of replacement behaviors both at home and at school; and the program was not a full-year program — the summer school offered only a half-day of services and little academic instruction.

50.     On or about September 17, 2007, C.H. and his parents notified the District of their intention to file a complaint with the Office of Administrative Hearings regarding the September 5, 2007 IEP.

51.     Once it was clear that C.H. and his parents would not agree to the new IEP, the District and ACBHCS violated the IDEA again by refusing to abide by the last agreed-upon IEP. Specifically, the District did not pay for C.H. to attend Clark until an agreement could be reached either through mediation or through a due process hearing, in accordance with the procedural protections in 20 U.S.C. § 1415(f) and CAL. EDUC. CODE § 56501(b)(4).

- 12 -

52.     C.H. filed for a due process hearing on September 28, 2007 to challenge the District's and ACBHCS's proposed IEP.  The requested remedy was placement at Clark, the non-public school to which C.H.'s June 12, 2007 IEP placed him for the 2007-2008 school year.  This was the only remedy for which evidence – expert or otherwise – was presented at the hearing and in the record.

53.     Unable to afford to enroll at Clark without the District's support, C.H. did not begin fourth grade at Clark that fall.

54.     C.H.'s parents understood that enrolling C.H. at EMQ that fall was a risk to his health and safety, as well as to his academic progress.  Specifically, C.H.'s last District placements had led to failure, including little academic progress and mental health deterioration requiring hospitalization.  Moreover, C.H.'s psychiatrist, Dr. Elena Labrada, had advised his parents that if C.H. had another failed educational placement, there could be significant consequences for his condition, such as further hospitalization or worse.  Fearing for C.H.'s health and safety, his parents did not agree to the District and ACBHCS's proposed IEP and did not enroll him at EMQ that fall.

55.     C.H. was unable to attend school during the fall of 2007 because the District and ACBHCS refused to comply with the IDEA's stay-put provision by failing to fully implement the last agreed-upon IEP until the matter could be resolved at the due process hearing.

**IV.     Although the Administrative Law Judge Found That The District and ACBHCS Denied C.H. a Free Appropriate Public Education, His Proposed Compensatory Relief Failed To Remedy The Problem.**

56.     The due process hearing took place from November 26 to December 7, 2007.

57.     At the hearing, there were 9 days of testimony about the programs at Clark and EMQ, as well as testimony about C.H.'s condition, academic performance and behavior.  There was, however, *no* testimony regarding supplemental tutoring options available at EMQ to substitute for fourth grade curriculum and education.

58.     On or about February 19, 2008, ALJ John Thawley ("ALJ Thawley") issued a decision from the due process hearing.

- 13 -

**A.**     **ALJ Thawley finds that the September 5, 2007 IEP denied C.H. a free appropriate public education.**

59.     In his decision, ALJ Thawley found that the District and ACBHCS had denied C.H. his right to a free appropriate public education by failing to implement the June 12, 2007 IEP.

60.     ALJ Thawley also found that the District and ACBHCS denied C.H. a free appropriate public education by making a pre-determined offer at the September 5, 2007 meeting, which denied his parents their right to meaningfully participate in the creation of C.H.'s IEP.

61.     However, ALJ Thawley did not find that the District and ACBHCS failed to give C.H.'s parents prior written notice of the decision not to implement the June 12, 2007 IEP.  ALJ Thawley also did not find that the offer of a place at EMQ was a denial of a free appropriate public education.

**B.**     **ALJ Thawley finds that the District and ACBHCS denied C.H. a free appropriate public education in multiple other ways.**

62.     In addition to his findings regarding the September 5, 2007 IEP and the failure to implement the June 12, 2007 IEP, ALJ Thawley also found that the District denied C.H. a free appropriate public education because it failed to draft goals and objectives to address his problems with reading fluency and depression, because it did not provide 20 minutes of counseling during the week of January 12, 2007, and because it neither conducted an occupational therapy assessment nor gave C.H.'s parents prior written notice of its decision not to offer such an assessment.

63.     ALJ Thawley also found that the failure of ACBHCS to include present levels of performance in its mental health assessment was a denial of C.H.'s right to a free appropriate public education.

64.     ALJ Thawley also found that Mr. Taubman-Walker's lack of knowledge about C.H.'s condition or his IEPs was a denial of his right to a free appropriate public education. However, ALJ Thawley concluded that this did not, in itself, constitute a denial of an appropriate education because Mr. Taubman-Walker's efforts to help C.H. during the extended school year

- 14 -

1    were consistent with C.H.'s IEP, even if Mr. Taubman-Walker was unaware of that IEP at the

2    time.

3         65.    Based on these seven total denials of a free appropriate public education, ALJ

4    Thawley found that C.H. was the prevailing party in part on all three of the issues raised at the

5    due process hearing.

6         **C.    However, ALJ Thawley's proposed remedy would not compensate C.H. for**

7              **his lost education.**

8         66.    To remedy the denial of C.H.'s right to an education, ALJ Thawley did not order

9    the full implementation of the June 12, 2007 IEP, which provided for C.H.'s placement at the

10   non-public school Clark.

11        67.    Instead, ALJ Thawley ordered the District to provide C.H. with 1.5 hours of

12   tutoring every week for a year and an additional 1 hour of counseling every week for a year as

13   compensation for the denial of his right to a free appropriate public education. There was no

14   testimony (expert or otherwise) at the hearing regarding the extent to which C.H. might benefit

15   from the tutoring nor was there any evidence presented that such tutoring was available or that 1.5

16   hours of tutoring every week would be sufficient to offset the months of education C.H. had lost

17   due to the District and ACBHCS's denial of a free and appropriate public education.

18                          **CAUSE OF ACTION**

19                          (20 U.S.C. § 1415)

20                     Claim for Relief Against Defendants

21        68.    C.H. realleges paragraphs 1 through 67, inclusive, as set forth above and

22   incorporates the same as if fully set forth herein.

23        69.    ALJ Thawley failed to conduct an appropriate legal analysis in determining that

24   the District and ACBHCS, at least partially, provided C.H. with a free appropriate public

25   education during the 2006-2007 and 2007-2008 school years, including the 2006-2007 extended

26   school year. In addition, he failed to conduct an appropriate legal analysis in determining that 75

27   hours of tutoring and 52 hours of counseling would fully remedy the District and ACBHCS's

28   denial of C.H.'s right to a free appropriate public education during the 2007-2008 school year.

- 15 -

1   Specifically, he incorrectly analyzed (a) what procedural and substantive violations constitute a

2   denial of an appropriate program, (b) what constitutes prior written notice under the IDEA and (c)

3   what constitutes a proper remedy for a denial of a free appropriate public education.

4          70.    ALJ Thawley failed to analyze the appropriate facts in making his determination

5   that the District and ACBHCS partially provided appropriate educational services to C.H. during

6   the years relevant to this matter.

7          71.    ALJ Thawley made incorrect and inconsistent findings of fact in reaching his

8   decision.  Specifically, his finding that C.H. was not denied an appropriate program during the

9   2006-2007 and 2007-2008 school years, including the 2006-2007 extended school year, and his

10  finding that C.H.'s parents received prior written notice of the District and ACBHCS's decision

11  not to implement the June 12, 2007 IEP were not supported by the evidence presented.

12         72.    ALJ Thawley incorrectly applied the facts to the law related to the issues of what

13  procedural and substantive violations constitute a denial of an appropriate program, when and

14  how prior written notice is required, and what constitutes an appropriate compensatory remedy.

15         73.    ALJ Thawley's decision and his proposed order of compensatory relief are not

16  entitled to deference where he failed to conduct appropriate legal analyses and where he failed to

17  make appropriate findings of fact.

18         74.    C.H. will suffer grave and irreparable harm for which no other adequate legal

19  remedy exists if the decision of the California Office of Administrative Hearings is not set aside,

20  in part, and specific findings made that are consistent with the provisions of the IDEA, California

21  law, and legal precedent in this jurisdiction.

22         75.    As the prevailing party at the administrative level, C.H. is entitled to reasonable

23  attorneys fees in accordance with 20 U.S.C. § 1415(i)(3)(B) and CAL. EDUC. CODE § 56507(d).

24         76.    C.H. has exhausted all administrative remedies pursuant to 20 U.S.C. §

25  1415(i)(2)(A).

26

27

28

## PRAYER FOR RELIEF

WHEREFORE, C.H. prays for the following relief:

1.    For an order setting aside the ALJ's order of compensatory relief in the form of 75 hours of tutoring and 52 hours of counseling;

2.    For an order that the District and ACBHCS be required to fully implement the June 12, 2007 IEP, authorizing C.H.'s immediate placement at Clark, or such other certified non-public school day treatment program specializing in mental health treatment programs for elementary school students as the Court may find to be consistent with the plan implemented at the June 12, 2007 IEP, for the current school year, until it is determined by procedures consistent with the IDEA that such a placement is no longer appropriate;

3.    That specific findings be made that are consistent with the provisions of the IDEA, *see* 20 U.S.C. § 1400 *et seq.*, including but not limited to, a finding that C.H. was denied a free appropriate public education in the 2006-2007 and 2007-2008 school years, including the 2006-2007 extended school year, that the District and ACBHCS failed to provide C.H. with prior written notice of its decision not to implement the June 12, 2007 IEP, and that the ordered 75 hours of tutoring and 52 hours of counseling is an inadequate remedy for the denial of a free appropriate public education during the relevant time period;

4.    That specific findings be made that are consistent with the provisions of the California Education Code, *see* CAL. EDUC. CODE § 56500 *et seq.*, including but not limited to, a finding that C.H. was denied a free appropriate public education in the 2006-2007 and 2007-2008 school years, including the 2006-2007 extended school year, that the District failed to provide C.H. with prior written notice of its decision not to implement the June 12 IEP, and that the ordered 75 hours of tutoring and 52 hours of counseling is an inadequate remedy for the denial of a free appropriate public education during the relevant time period;

3.    For reasonable attorney fees and costs as a prevailing party in the underlying administrative action pursuant to 20 U.S.C. § 1415(i)(3) and CAL. EDUC. CODE § 56507(b);

4.    For reasonable attorney fees and costs in bringing and prosecuting this appeal pursuant to 20 U.S.C. § 1415(i)(3) and CAL. EDUC. CODE § 56507(b); and

- 17 -

1

    5.  For such other relief as this Court may deem just and proper.

2

3    DATED: September 12, 2008            MUNGER, TOLLES & OLSON LLP
                                       Joseph D. Lee

4                                         Robyn K. Bacon

5

6                               By:  /s/ Robyn Kali Bacon
                                          Robyn K. Bacon

7

                         Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I, the undersigned, declare that I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California 90071-1560.

I hereby certify that this document(s) filed through the ECF filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non-registered participants on September 12, 2008.

On September 12, 2008, I served upon the interested party(ies) in this action the foregoing document(s) described as:

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR**
**RELIEF FROM ADMINISTRATIVE DECISION,**
**PURSUANT TO 20 U.S.C. § 1415**

☒ By placing ☐ the original(s) ☒ a true and correct copy(ies) thereof, as set out below, in an addressed, sealed envelope(s) clearly labeled to identify the person(s) being served at the address(es) set forth on the attached service list.

☒ **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the United States Postal Service at 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California, on that same date, following ordinary business practices. I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

☐ **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I delivered the sealed Federal Express envelope(s) to an employee authorized by Federal Express to receive documents, with delivery fees paid or provided for.

☐ **BY FACSIMILE (AS INDICATED ON ATTACHED SERVICE LIST)** By causing to be sent a true and correct copy(ies) of said document via facsimile transmission. The transmission was reported as complete and without error. A true and correct copy of the machine's transmission report, indicating the date and time that the transmission was completed without error is attached to this proof of service and is incorporated herein by this reference. The telephone number of the facsimile machine I used was (213) 683-9510. This facsimile machine complies with Rule 2003(3) of the California Rules of Court.

☐ **(STATE)** I declare under penalty of perjury that the foregoing is true and correct.

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

1

Richard Edward Winnie                    Attorneys for County of Alameda
Office of the County Counsel
2      1221 Oak Street, Suite 450
Oakland, CA  94612-4296

3

Telephone: (510) 272-6700
4      Fax: (510) 272-5020

5

Executed on September 12, 2008, at Los Angeles, California.
6

7                                          *Carol Jette*

8                                    _____
Carol Jette

9      5708547.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28